Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Melissa J. Levine
mlevine@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*POP MART Americas Inc.,*
*POP MART (Singapore) Holding Pte. Ltd. and*
*Beijing POP MART Cultural & Creative Co. Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POP MART AMERICAS INC., POP MART (SINGAPORE) HOLDING PTE. LTD. and BEIJING POP MART CULTURAL & CREATIVE CO. LTD, <br><br> *Plaintiffs* <br><br> v. <br><br> ANGEL TOY STORE STORE, ANHUI BLISS INTERNATIONAL TRADE CO.,LTD, AURORA GALAXY (SHENZHEN) CULTURE AND MEDIA CO., LTD., BAODING STAR DREAM GARDEN TRADING CO., LTD., BEIJING PDMTOY TRADING CO., LTD., CHANGSHA SPEED ZEBRA E-COMMERCE CO., LTD., CHANGZHOU CONTERCE GIFTS & CRAFTS CO., LTD., CHONGQING KALEIDOSCOPE TECHNOLOGY CO., LTD., COLORFUL JOY CASTLE TOY STORE, CRAZE TOY STORE, DEQING WINNERS XINXIN TRADING CO., LTD., DONGGUAN CHENMIAO ELECTRONICS CO.,LTD., DONGGUAN DEVLLIN CRAFTS CO., LTD ., DONGGUAN HOMI E- | CIVIL ACTION NO. <br><br><br> **COMPLAINT** <br><br> **Jury Trial Requested** <br><br> <u>**FILED UNDER SEAL**</u> |

COMMERCE CO., LTD., DONGGUAN JIAEN TECHNOLOGY CO., LTD., DONGGUAN MOYU TOYS CO., LTD., DONGGUAN WANGHONG TOYS & GIFTS CO., LTD., DONGGUAN WOODFIELD BABY PRODUCTS COMPANY LIMITED, DONGHAI WISE CRYSTAL JEWELRY CO., LTD., DONGYANG YOUGE TOY FACTORY(INDIVIDUAL BUSINESS), EASYLIVE COMMERCE (GUANGZHOU) CO., LTD., FUZHOU GULOU DISTRICT LUQI ELECTRONIC PRODUCTS FIRM, FUZHOU INTERNET STAR INFORMATION TECHNOLOGY CO., LTD., GBIGL OFFICIAL STORE, GUANGDONG CILY TECHNOLOGY CO., LTD., GUANGXI ORIENTAL BRIGHT TRADING CO., LTD., GUANGXI PEIROU TECHNOLOGY INFORMATION CO., LTD., GUANGZHOU BAOBAO MART TRENDY TOYS CULTURAL CREATIVITY CO., LTD., GUANGZHOU CITY HUANGPU DISTRICT TRANJIA TRADING FIRM (INDIVIDUAL BUSINESS), GUANGZHOU HOUJIANGXI TRADING CO., LTD., GUANGZHOU LABUBU CLOTHING MANUFACTURING CO., LTD., GUANGZHOU LABUBU TRADING CO., LTD., GUANGZHOU XINCHAO TOYS CO., LTD., GUANGZHOU XINHUI INTERNATIONAL TRADING CO., LTD., GUANGZHOU YINGSHUO TECHNOLOGY CO., LTD., GUANGZHOU YUDAREN CROSS BOARDER E-COMMERCE CO., LTD., HANGZHOU RUANLING CULTURE COMMUNICATION CO., LTD., HANGZHOU YIQU UNICORN CULTURE AND CREATIVITY CO., LTD, HEBEI XIONGAN ZANGFENG TRADING CO., LTD., HEFEI YISHUHUAKAI JEWELRY CO., LTD., HENAN LESHUO CRAFTS CO., LTD., HENAN QUEEN CARD INDUSTRIAL DEVELOPMENT CO., LTD., HENAN SUPER QUEEN GARMENT CO., LTD., HENAN YOKIDS GROUP, HIGH ENERGY SURPRISE BLIND BOX STORE, HK WILLOW LIMITED, HUIZHOU LINDA TOYS CO., LTD., JINHUA WANQUAN DAILY CHEMICAL CO., LTD., JOYLIT INTERNATIONAL LIMITED, JULI QICHUANG TRADING (SHENZHEN) CO., LTD., KUMIKO-SHOP STORE, KUMPA STORE, LABUBU SURPRISE BLIND BOX STORE, LIANJIANG

COUNTY JINGJING BU JING E-COMMERCE STORE( INDIVIDUAL BUSINESS), NANJING TONGXINZHIRONG INTERNATIONAL TRADE CO., LTD., ORIENT (SHENZHEN) TRADE CO., LTD., PLUSH TOY (QINGDAO) CO., LTD., PUNING CITY CHIWEI HANGXIANGBIAO TOY FIRM (INDIVIDUAL BUSINESS), QINGDAO UE HOME DESIGN & PRODUCTS CO., LTD., QUANZHOU LUOGANG DISTRICT SHUANGYANG SCREWED TONE DEPARTMENT STORE(INDIVIDUAL BUSINESS), RONGCHENG COUNTY ZHONGZHUO COMMERCIAL STORE, SHANDONG SHINEYOU WOOD INDUSTRY CO., LTD., SHANGHAI BABAILI INFORMATION TECHNOLOGY CO., LTD., SHANTOU CHAOYANG DISTRICT GUIYU YASILIAN KNITTING UNDERWEAR FACTORY (INDIVIDUAL BUSINESS), SHANTOU CHENGHAI PAITE TOYS CO., LTD., SHANTOU YUEQILI TECHNOLOGY CO., LTD., SHENZHEN BANCHONG TECHNOLOGY CO., LTD., SHENZHEN BEISIKE TECHNOLOGY CO., LTD., SHENZHEN BLIND THINKING PAI TOYS CO., LTD., SHENZHEN BLUETENCE INDUSTRIAL CO., LTD, SHENZHEN BOUMATI TRADING CO., LTD., SHENZHEN CHENGXINYUN TECHNOLOGY CO., LTD., SHENZHEN CHUANGZHISHENG TECHNOLOGY CO., LTD., SHENZHEN CROSSING LIGHT BOAT TECHNOLOGY CO., LTD., SHENZHEN GUANCHENG TRADING CO., LTD., SHENZHEN HENGRUIHE CONSULTING SERVICE CO., LTD., SHENZHEN HONGYI NEW ENERGY TECHNOLOGY CO., LTD, SHENZHEN IBRS INDUSTRIES CO., LTD., SHENZHEN JIONGSHENG INTERNATIONAL TRADE CO., LTD., SHENZHEN JOYFUN TECHNOLOGY CO., LIMITED, SHENZHEN LABUBU TOYS CO., LTD., SHENZHEN LABUBU TRADING CO., LTD., SHENZHEN LABUBU TRADING LIMITED COMPANY, SHENZHEN LANXI TECHNOLOGY CO., LTD., SHENZHEN LONGGANG DISTRICT YIPENGDA TRADING FIRM (INDIVIDUAL BUSINESS), SHENZHEN MINGQUE TIMES INTERNATIONAL TRADE CO., LTD., SHENZHEN MUMINGZHIYUE CULTURE CO., LTD.,

SHENZHEN NAUGHTY HILL TECHNOLOGY CO., LTD., SHENZHEN NEWSTAR ELECTRONIC TECHNOLOGY CO., LTD., SHENZHEN PINSHENG DISPLAY TECHNOLOGY CO., LTD., SHENZHEN PINYU TECHNOLOGY CO., LTD., SHENZHEN PROMOTION GIFTS TRADING CO., LTD., SHENZHEN QIANQU INDUSTRIAL CO., LTD., SHENZHEN QINZHIXIN TECHNOLOGY CO., LTD., SHENZHEN RABBIT CAT TECHNOLOGY CO., LTD., SHENZHEN RNLYEE FASHION GARMENT CO.,LTD., SHENZHEN RUIKELAISI TECHNOLOGY CO., LTD., SHENZHEN SHENMAN TECHNOLOGY CO., LTD., SHENZHEN SHUOYANG CROSS-BORDER E-COMMERCE CO., LTD., SHENZHEN SKY LINK TECHNOLOGY CO., LTD., SHENZHEN STONEWAY TECHNOLOGY CO., LTD., SHENZHEN TUOYI ELECTRONIC COMMERCE CO., LTD., SHENZHEN WALKSTARS TECHNOLOGY CO., LTD., SHENZHEN WEISHICHANG TECHNOLOGY CO., LTD., SHENZHEN XINGHAOSHENG INTERNATIONAL TRADE CO., LTD., SHENZHEN XINGQIONG KUANGXIANG TECHNOLOGY CO., LTD., SHENZHEN XINHONGHAI PACKAGING MATERIALS CO., LTD., SHENZHEN XINHUIYI TECHNOLOGY CO., LTD., SHENZHEN YANDA TONGJI TRADING CO., LTD., SHENZHEN YAOMIAOXIN TECHNOLOGY CO., LTD., SHENZHEN YIHONG BO ELECTRONIC TECHNOLOGY CO,.LTD, SHENZHEN YIMEIJIA IMPORT AND EXPORT TRADING CO., LTD., SHENZHEN YIXINWANG GIFT CO., LTD., SHENZHEN YOUPULE TECHNOLOGY CO., LTD., SHENZHEN YUANYING E-COMMERCE CO., LTD., SHENZHEN YUN QI TECHNOLOGY CO., LTD., SHENZHEN ZEQIAN E-COMMERCE CO., LTD., SHENZHEN ZIYAN FASHION TECHNOLOGY CO., LTD., SHOP1104271587 STORE, SHOP1104816419 STORE, SHOP1104933173 STORE, SUNNYPEAK GLOBAL TRADING CO., LTD., SURPRISE CABIN TOYS STORE, TAIWAN HEN WEI COMPANY, TERRY TECHNOLOGIES(DALIAN)CO., LTD., THREE ANTS (HANGZHOU) SUPPLY CHAIN MANAGEMENT CO., LTD., TIANZHOU TIMES

(HENAN) INTERNATIONAL TRADE CO., LTD., TINKER JUNCTION TOYS CO., LTD, ULTRAECOMAT (QINGDAO) CO., LTD., WEIZHIFAN NETWOK TECHNOLOGY (DONGGUAN) CO., LTD., WONDERVILLE INTERNATIONAL SUPPLY CHAIN MANAGEMENT (QINGDAO) CO., LTD., WUHAN BAIJIA SHIRUI TRADING CO., LTD., WUHAN JIANTU E-COMMERCE CO., LTD., WUXI CHAO XI CROSS-BORDER E-COMMERCE CO., LTD., XIAMEN OFUN TECHNOLOGY CO., LTD., XI'AN SIHANGDA INTERNATIONAL TRADE CO., LTD., XINGGUI (YIWU) TRADING CO., LTD., XINYU XUCAI TRADING CO., LTD., YANGZHOU MAIYOUTU CRAFTS CO., LTD., YIWU AILU CULTURE CREATIVITY STUDIO, YIWU ALTA INTERNATIONAL TRADE CO., LTD., YIWU ANCHUANG TRADE CO., LTD., YIWU BAIGE CRAFTS CO., LTD., YIWU BEIYU HOUSEHOLD PRODUCTS CO., LTD., YIWU BILAN CRAFTS CO., LTD., YIWU CITY AMI TOYS CO., LTD., YIWU DAIYINGSHI TRADING CO., LTD., YIWU DAYEZI JEWELRY CO., LTD., YIWU ECHO TRADE CO., LTD., YIWU FANGE E-COMMERCE FIRM, YIWU GENGRUI TRADING CO., LTD., YIWU HUAJING TRADING CO., LTD., YIWU HUANJI E-COMMERCE FIRM (INDIVIDUAL BUSINESS), YIWU JIMEN TOYS CO., LTD., YIWU JINGQIU TOYS CO., LTD., YIWU KERUI CLOTHING CO., LTD., YIWU KUBEI CULTURAL AND CREATIVE CO., LTD., YIWU LAJIE E-COMMERCE FIRM(INDIVIDUAL BUSINESS), YIWU LEYING BAGS CO., LTD., YIWU LILANG CRAFTS CO., LTD., YIWU LUCKY STAR CRAFTS CO., LTD., YIWU LUWEI TRADING FIRM, YIWU LUXI TRADING CO., LTD., YIWU PIXEL DAILY NECESSITIES CO., LTD., YIWU QINCHI LUGGAGE CO., LTD., YIWU QINGXU COSMETICS CO., LTD., YIWU QIXI TOYS CO., LTD., YIWU RONGCAN CRAFTS CO., LTD., YIWU RONGJI JEWELRY CO., LTD., YIWU RONGYUE TOYS CO., LTD., YIWU SILVER JEWELRY CO., LTD., YIWU WANGZONE E-COMMERCE FIRM, YIWU XINGQI IMPORT & EXPORT CO., LTD., YIWU XINGYI IMPORT AND EXPORT CO., LTD., YIWU XIONGXI E-

COMMERCE FIRM (INDIVIDUAL BUSINESS), YIWU YIMU TRADING CO., LTD., YIWU YIXUAN TRADING CO., LTD., YIWU ZHAOKUO TRADING CO., LTD, YIWU ZHENWAN E-COMMERCE CO., LTD., YULIN YUZHOU DISTRICT COLORFUL CLOTHING STORE, ZHEJIANG MULTISTAY INDUSTRY CO., LTD, ZHENGZHOU PLAYFUL CULTURE AND CREATIVITY CO., LTD., ZHENGZHOU QIMENG WANQU CROSS BORDER E-COMMERCE CO., LTD., ZHENGZHOU REFUSES TO DEFINE CULTURAL CREATIVITY CO., LTD., ZHENGZHOU XUANLANG INTELLIGENT TECHNOLOGY CO., LTD., ZHENGZHOU YAOZHONG NETWORK TECHNOLOGY CO., LTD., ZHENGZHOU YUHONG GUOCHUANG TRADING CO., LTD., ZHONGSHAN AUMETER TECHNOLOGY CO., LTD. and ZIZAIXING (SHENZHEN) TECHNOLOGY CO., LTD.,

*Defendants*

## GLOSSARY

| Term | Definition |
|---|---|
| **Plaintiffs or POP MART** | POP MART Americas Inc. ("POP MART Americas"), POP MART (Singapore) Holding Pte. Ltd. ("POP MART Singapore") and Beijing POP MART Cultural & Creative Co., Ltd. ("POP MART Beijing") |
| **Defendants** | Angel Toy Store Store, Anhui Bliss International Trade Co.,Ltd, Aurora Galaxy (shenzhen) Culture And Media Co., Ltd., Baoding Star Dream Garden Trading Co., Ltd., Beijing PDMTOY Trading Co., LTD., Changsha Speed Zebra E-Commerce Co., Ltd., Changzhou Conterce Gifts & Crafts Co., Ltd., Chongqing Kaleidoscope Technology Co., Ltd., Colorful Joy Castle Toy Store, Craze Toy Store, Deqing Winners Xinxin Trading Co., Ltd., Dongguan Chenmiao Electronics Co., Ltd., Dongguan Devllin Crafts Co., Ltd ., Dongguan Homi E-Commerce Co., Ltd., Dongguan Jiaen Technology Co., Ltd., Dongguan Moyu Toys Co., Ltd., Dongguan Wanghong Toys & Gifts Co., Ltd., Dongguan Woodfield Baby Products Company Limited, Donghai Wise Crystal Jewelry Co., Ltd., Dongyang Youge Toy Factory(Individual Business), Easylive Commerce (Guangzhou) Co., Ltd., Fuzhou Gulou District Luqi Electronic Products Firm, Fuzhou Internet Star Information Technology Co., Ltd., GBIGL Official Store, Guangdong Cily Technology Co., Ltd., Guangxi Oriental Bright Trading Co., Ltd., Guangxi Peirou Technology Information Co., Ltd., Guangzhou Baobao Mart Trendy Toys Cultural Creativity Co., Ltd., Guangzhou City Huangpu District Tranjia Trading Firm (individual Business), Guangzhou Houjiangxi Trading Co., Ltd., Guangzhou Labubu Clothing Manufacturing Co., Ltd., Guangzhou Labubu Trading Co., Ltd., Guangzhou Xinchao Toys Co., Ltd., Guangzhou Xinhui International Trading Co., Ltd., Guangzhou Yingshuo Technology Co., Ltd., Guangzhou Yudaren Cross Boarder E-Commerce Co., Ltd., Hangzhou Ruanling Culture Communication Co., Ltd., Hangzhou Yiqu Unicorn Culture And Creativity Co., Ltd, Hebei Xiongan Zangfeng Trading Co., Ltd., Hefei Yishuhuakai Jewelry Co., Ltd., Henan Leshuo Crafts Co., Ltd., Henan Queen Card Industrial Development Co., Ltd., Henan Super Queen Garment Co., Ltd., Henan Yokids Group, High Energy Surprise Blind Box Store, HK WILLOW LIMITED, Huizhou Linda Toys Co., Ltd., Jinhua Wanquan Daily Chemical Co., Ltd., Joylit International Limited, Juli Qichuang Trading (shenzhen) Co., Ltd., Kumiko-shop Store, KUMPA Store, Labubu Surprise Blind Box Store, Lianjiang County Jingjing Bu Jing E-Commerce Store( Individual Business), Nanjing Tongxinzhirong International Trade Co., Ltd., Orient (shenzhen) |

Trade Co., Ltd., Plush Toy (qingdao) Co., Ltd., Puning City Chiwei Hangxiangbiao Toy Firm (Individual Business), Qingdao Ue Home Design & Products Co., Ltd., Quanzhou Luogang District Shuangyang Screwed Tone Department Store(Individual Business), Rongcheng County Zhongzhuo Commercial Store, Shandong Shineyou Wood Industry Co., Ltd., Shanghai Babaili Information Technology Co., Ltd., Shantou Chaoyang District Guiyu Yasilian Knitting Underwear Factory (individual Business), Shantou Chenghai Paite Toys Co., Ltd., Shantou Yueqili Technology Co., Ltd., Shenzhen Banchong Technology Co., Ltd., Shenzhen Beisike Technology Co., Ltd., Shenzhen Blind Thinking Pai Toys Co., Ltd., Shenzhen Bluetence Industrial Co., Ltd, Shenzhen Boumati Trading Co., Ltd., Shenzhen Chengxinyun Technology Co., Ltd., Shenzhen Chuangzhisheng Technology Co., Ltd., Shenzhen Crossing Light Boat Technology Co., Ltd., Shenzhen Guancheng Trading Co., Ltd., Shenzhen Hengruihe Consulting Service Co., Ltd., Shenzhen Hongyi New Energy Technology Co., Ltd, Shenzhen Ibrs Industries Co., Ltd., Shenzhen Jiongsheng International Trade Co., Ltd., Shenzhen Joyfun Technology Co., Limited, Shenzhen Labubu Toys Co., Ltd., Shenzhen Labubu Trading Co., Ltd., Shenzhen Labubu Trading Limited Company, Shenzhen Lanxi Technology Co., Ltd., Shenzhen Longgang District Yipengda Trading Firm (individual Business), Shenzhen Mingque Times International Trade Co., Ltd., Shenzhen Mumingzhiyue Culture Co., Ltd., Shenzhen Naughty Hill Technology Co., Ltd., Shenzhen Newstar Electronic Technology Co., Ltd., Shenzhen Pinsheng Display Technology Co., Ltd., Shenzhen Pinyu Technology Co., Ltd., Shenzhen Promotion Gifts Trading Co., Ltd., Shenzhen Qianqu Industrial Co., Ltd., Shenzhen Qinzhixin Technology Co., Ltd., Shenzhen Rabbit Cat Technology Co., Ltd., Shenzhen Rnlyee Fashion Garment Co.,ltd., Shenzhen Ruikelaisi Technology Co., Ltd., Shenzhen Shenman Technology Co., Ltd., Shenzhen Shuoyang Cross-Border E-Commerce Co., Ltd., Shenzhen Sky Link Technology Co., Ltd., Shenzhen Stoneway Technology Co., Ltd., Shenzhen Tuoyi Electronic Commerce Co., Ltd., Shenzhen Walkstars Technology Co., Ltd., Shenzhen Weishichang Technology Co., Ltd., Shenzhen Xinghaosheng International Trade Co., Ltd., Shenzhen Xingqiong Kuangxiang Technology Co., Ltd., Shenzhen Xinhonghai Packaging Materials Co., Ltd., Shenzhen Xinhuiyi Technology Co., Ltd., Shenzhen Yanda Tongji Trading Co., Ltd., Shenzhen Yaomiaoxin Technology Co., Ltd., Shenzhen Yihong Bo Electronic Technology Co,.Ltd, Shenzhen Yimeijia Import And Export Trading Co., Ltd., Shenzhen Yixinwang Gift Co., Ltd., Shenzhen Youpule Technology Co., Ltd., Shenzhen Yuanying E-Commerce Co.,

Ltd., Shenzhen Yun Qi Technology Co., Ltd., Shenzhen Zeqian E-Commerce Co., Ltd., Shenzhen Ziyan Fashion Technology Co., Ltd., Shop1104271587 Store, Shop1104816419 Store, Shop1104933173 Store, SunnyPeak Global Trading Co., Ltd., Surprise Cabin Toys Store, Taiwan Hen Wei COMPANY, Terry Technologies(dalian)co., Ltd., Three Ants (hangzhou) Supply Chain Management Co., Ltd., Tianzhou Times (henan) International Trade Co., Ltd., Tinker Junction Toys Co., Ltd, Ultraecomat (qingdao) Co., Ltd., Weizhifan Netwok Technology (dongguan) Co., Ltd., Wonderville International Supply Chain Management (qingdao) Co., Ltd., Wuhan Baijia Shirui Trading Co., Ltd., Wuhan Jiantu E-Commerce Co., Ltd., Wuxi Chao Xi Cross-Border E-Commerce Co., Ltd., Xiamen Ofun Technology Co., Ltd., Xi'an Sihangda International Trade Co., Ltd., Xinggui (yiwu) Trading Co., Ltd., Xinyu Xucai Trading Co., Ltd., Yangzhou Maiyoutu Crafts Co., Ltd., Yiwu Ailu Culture Creativity Studio, Yiwu Alta International Trade Co., Ltd., Yiwu Anchuang Trade Co., Ltd., Yiwu Baige Crafts Co., Ltd., Yiwu Beiyu Household Products Co., Ltd., Yiwu Bilan Crafts Co., Ltd., Yiwu City Ami Toys Co., Ltd., Yiwu Daiyingshi Trading Co., Ltd., Yiwu Dayezi Jewelry Co., Ltd., Yiwu Echo Trade Co., Ltd., Yiwu Fange E-Commerce Firm, Yiwu Gengrui Trading Co., Ltd., Yiwu Huajing Trading Co., Ltd., Yiwu Huanji E-Commerce Firm (individual Business), Yiwu Jimen Toys Co., Ltd., Yiwu Jingqiu Toys Co., Ltd., Yiwu Kerui Clothing Co., Ltd., Yiwu Kubei Cultural And Creative Co., Ltd., Yiwu Lajie E-Commerce Firm(Individual Business), Yiwu Leying Bags Co., Ltd., Yiwu Lilang Crafts Co., Ltd., Yiwu Lucky Star Crafts Co., Ltd., Yiwu Luwei Trading Firm, Yiwu Luxi Trading Co., Ltd., Yiwu Pixel Daily Necessities Co., Ltd., Yiwu Qinchi Luggage Co., Ltd., Yiwu Qingxu Cosmetics Co., Ltd., Yiwu Qixi Toys Co., Ltd., Yiwu Rongcan Crafts Co., Ltd., Yiwu Rongji Jewelry Co., Ltd., Yiwu Rongyue Toys Co., Ltd., Yiwu Silver Jewelry Co., Ltd., Yiwu Wangzone E-Commerce Firm, Yiwu Xingqi Import & Export Co., Ltd., Yiwu Xingyi Import And Export Co., Ltd., Yiwu Xiongxi E-Commerce Firm (individual Business), Yiwu Yimu Trading Co., Ltd., Yiwu Yixuan Trading Co., Ltd., Yiwu Zhaokuo Trading Co., Ltd, Yiwu Zhenwan E-Commerce Co., Ltd., Yulin Yuzhou District Colorful Clothing Store, Zhejiang Multistay Industry Co., Ltd, Zhengzhou Playful Culture And Creativity Co., Ltd., Zhengzhou Qimeng Wanqu Cross Border E-Commerce Co., Ltd., Zhengzhou Refuses To Define Cultural Creativity Co., Ltd., Zhengzhou Xuanlang Intelligent Technology Co., Ltd., Zhengzhou Yaozhong Network Technology Co., Ltd., Zhengzhou Yuhong Guochuang Trading Co., Ltd., Zhongshan Aumeter Technology Co., Ltd. and Zizaixing (Shenzhen)

| | |
|---|---|
| | Technology Co., Ltd. |
| **Alibaba** | Alibaba.com Singapore E-Commerce Pte. Ltd. and/or any other entity that owns and/or operates the Alibaba.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **AliExpress** | AliExpress E-Commerce One Pte., Ltd. and/or any other entity that owns and/or operates the AliExpress.com online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiffs |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiffs' Complaint |
| **Application** | Plaintiffs' *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Lin Dec.** | Declaration of Fei Lin in Support of Plaintiffs' Application |
| **Turitto Dec.** | Declaration of Michael Turitto in Support of Plaintiffs' Application |
| **LABUBU Products** | Elf-like figures with mischievous looks that come in a variety of shapes, sizes, colors and styles, such as keychains, plush dolls, and accessories, originating from POP MART's collectible series, "THE MONSTERS" |
| **LABUBU Registrations** | U.S. Trademark Registration Nos.: 6,592,820 for " **POP MART** " for a variety of goods in Class 28; 7,839,156 for " THE MONSTERS " for a variety of goods in Class 28; and 7,839,144 for "LABUBU" for a variety of goods in Class 28 |
| **LABUBU Application** | U.S. Application No: 79/402,363 for "POP MART" for a variety of goods in Classes 14 and 25 |

| | |
|---|---|
| **LABUBU Marks** | The marks covered by the LABUBU Registrations and LABUBU Application |
| **LABUBU Works** | The works covered by the U.S. Copyright registrations listed in Exhibit D to the Complaint |
| **Counterfeit Products or Infringing Products** | Products bearing or used in connection with the LABUBU Marks and/or LABUBU Works, and/or products in packaging and/or containing labels bearing the LABUBU Marks and/or LABUBU Works, and/or bearing or used in connection with marks and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks and/or LABABU Marks, and/or products that are identical or confusingly similar to LABUBU Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Alibaba and/or AliExpress as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), the Alibaba Group d/b/a Alibaba.com payment services (e.g., Alipay.com Co., Ltd., Ant Financial Services Group) ("Alipay") and PingPong Global Solutions, Inc. ("PingPong") |
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, Alibaba and/or AliExpress, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, make, use, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

Plaintiffs, by and through their undersigned counsel, allege as follows:[1]

## NATURE OF THE ACTION

1.      This action involves claims for counterfeiting of Plaintiffs' federally registered trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d); trademark infringement of POP MART Singapore's and POP MART Beijing's federally registered trademarks in violation of § 32 of the Federal Trademark (Lanham) Act, 15 U.S.C. §§ 1051 *et seq*.; trademark infringement of Plaintiffs' unregistered trademark, false designation of origin, passing off and unfair competition in violation of Section 43(a) of the Trademark Act of 1946, as amended (15 U.S.C. §1125(a)); copyright infringement of POP MART Beijing's federally registered copyrights in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101 *et seq.* and related state and common law claims, arising from the infringement of the LABUBU Marks and LABUBU Works, including, without limitation, by Defendants manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling unlicensed, counterfeit and infringing versions of Plaintiffs' LABUBU Products by Defendants.

## JURISDICTION AND VENUE

2.      This Court has federal subject matter jurisdiction over the claims asserted in this Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 15 U.S.C. § 1121 as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and the Copyright Act, 17 U.S.C. §§ 101 *et seq.*; pursuant to 28 U.S.C. §1338(b) as an action arising out of claims for false designation of origin and unfair competition and pursuant to 28 U.S.C. § 1332, as there is diversity between the parties and the matter in controversy exceeds, exclusive of interests and costs, the sum of seventy-five thousand dollars. This Court has supplemental jurisdiction pursuant

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

to 28 U.S.C. §§1367(a), as the claims asserted thereunder are so closely related to the federal claims brought in this Action as to form part of the same case or controversy.

3.      Personal jurisdiction exists over Defendants in New York pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in New York, and/or derive substantial revenue from their business transactions in New York and/or otherwise avail themselves of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiffs in New York such that Defendants should reasonably expect such actions to have consequences in New York, for example:

a.      Upon information and belief, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the U.S., including New York, through accounts with online marketplace platforms such as Alibaba and/or AliExpress, as well as any and all as yet undiscovered User Accounts, through which consumers in the U.S., including New York, can view one or more of Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Counterfeit Products and to place orders for, receive invoices for and purchase Counterfeit Products for delivery in the U.S., including New York, as a means for establishing regular business with the U.S., including New York.

b.      Upon information and belief, Defendants are sophisticated sellers, each operating one or more commercial businesses through their respective User Accounts, using their Merchant Storefronts to manufacture, import, export, advertise, market,

2

promote, distribute, offer for sale and/or otherwise deal in products, including the Counterfeit Products at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically New York.

c.      Upon information and belief, all Defendants accept payment in U.S. Dollars and offer shipping to the U.S., including to New York and specifically to the New York Address.

d.      Upon information and belief, Defendants have transacted business with consumers located in the U.S., including New York, for the sale and shipment of Counterfeit Products.

e.      Upon information and belief, Defendants are aware of Plaintiffs, their LABUBU Products, LABUBU Marks and LABUBU Works and are aware that their illegal counterfeiting and infringing actions alleged herein are likely to cause injury to Plaintiffs in the U.S. and specifically, in New York.

4.      Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact and/or solicit business in New York.

## THE PARTIES

5.      Plaintiff POP MART Americas is a Delaware corporation with its principal place of business at 1181 Galleria Way, Glendale, California 91210.

6.      Plaintiff POP MART Singapore is a limited company organized under the laws of Singapore with a principal place of business at 22 Cross Street, #03-119 Cross Street Exchange Singapore 048421.

7.      Plaintiff POP MART Beijing is a limited company organized under the laws of China with a principal place of business at Room 3606, 36th Fl., Block A, 101, Fl. 4-33, Bldg. 13, Zone 4, Wangjing Dongyuan, Chaoyang

3

Dist. Beijing China 100102.

8.      Upon information and belief, Defendants are merchants on the Alibaba and/or AliExpress platforms, through which Defendants offer for sale and/or sell Counterfeit Products, with principal places of business at the addresses identified, if any, in the screenshots of Defendants' Merchant Storefronts in **Exhibit A**.

### GENERAL ALLEGATIONS
### Plaintiffs and Their Well-Known LABUBU Products

9.      POP MART is a famous design and toy brand known worldwide for its collectible and imaginative toys.

10.     POP MART works with artists and collaborates with major media companies (such as Disney) to produce high-quality and unique toys and figures, accessible to customers in novel ways, such as in robotic vending machines, called "Roboshops", as well as small cardboard packages with mystery collectibles, called "blind boxes" ("POP MART Products").[2]

11.     The POP MART Products are sold globally through Plaintiffs' e-commerce website, www.popmart.com, through the POP MART app, in over 500 POP MART retail stores and more than 2,500 POP MART Roboshops, in over 30 countries and regions.[3]

12.     In the United States, the POP MART Products are distributed by POP MART Americas, which is the exclusive licensee of POP MART Singapore's and POP MART Beijing's intellectual property rights in the United States.

13.     One of POP MART's most famous products is its line of elf-like characters with mischievous looks from POP MART's collectible series, "THE MONSTERS", created by Hong

---

[2] Mark Faithfull, *How Pop Mart Became China's Latest Brand To Target U.S. Growth*, FORBES (Jun 05, 2024), https://www.forbes.com/sites/markfaithfull/2024/06/05/how-pop-mart-became-chinas-latest-brand-to-target-us-growth/.
[3] *About POP MART*, POP MART, https://www.popmart.com/us/brand-introduction (last visited July 28, 2025).

Kong-born illustrator Kasing Lung, which come in a variety of shapes, sizes, colors, styles, and product types, such as keychains, plush dolls, and accessories.[4] Images of examples of the LABUBU Products are attached hereto as **Exhibit B** and incorporated herein by reference.

14.     The LABUBU Products typically retail for between $14.99 - $99.99. However, collectibles and other rare figures may be sold for more,[5] such as the "Mega" LABUBU, which retails for $959.90.[6]

15.      Recently the LABUBU Products have become viral, sending consumers in a frenzy to purchase them before they sell out.[7] There have been more than 2 million #LABUBU posts on TikTok alone in the last two years[8] and celebrities such as Rihanna, Cher and Kim Kardashian have posted images on Instagram featuring LABUBU Products.

16.     The LABUBU Products have also been featured in many news outlets throughout the United States and globally, such as *The New York Times*[9], *BBC*[10], *Vogue*[11] and *Forbes*.[12]

17.     Due to POP MART'S success, in 2024, its revenue more than doubled to $1.8 billion.[13]

---

[4] Rebecca Rodriguez, *What is Labubu? Why is she so popular? We have answers.,* NBC NEWS (June 3, 2025), https://www.nbcnews.com/select/shopping/what-is-a-labubu-rcna210522.
[5] Mary Whitfill Roeloffs, *This Labubu Just Sold For $10,585: Here's Why They Might Be Good Investments*, FORBES (June 24, 2025), https://www.forbes.com/sites/maryroeloffs/2025/07/24/this-labubu-just-sold-for-10585-heres-why-they-might-be-good-investments/.
[6] MEGA LABUBU TEC 1000% All About Us, POP MART, https://www.popmart.com/us/products/1011/mega-labubu-tec-1000-all-about-us (July 23, 2025).
[7] Juliana Kim, *'Labubu' is a plush toy that is causing a frenzy. Here's its origin story*, NPR (June 18, 2025) https://www.npr.org/2025/06/18/g-s1-72939/what-is-labubu-pop-mart-explained.
[8] *Trend Discovery*, TIKTOK, https://ads.tiktok.com/business/creativecenter/hashtag/LABUBU (last visited July 28, 2025).
[9] Esther Zuckerman, *Call it the Labubu Effect: Cute Sidekicks Rule Multiplexes This Summer*, NY TIMES (July 22, 2025), https://www.nytimes.com/2025/07/22/movies/labubu-movie-sidekicks-stitch-toothless.html.
[10] Fan Wang and Adam Hancock, *Adorable or just weird? How Labubu dolls conquered the world*, BBC (Jun. 19, 2025), https://www.bbc.com/news/articles/cy4ydxlm9n9o
[11] Lara Johnson-Wheeler, *And They Call It Plushie Love: Fashionable People on Their Labubu Obsession*, VOGUE (May 31, 2025) https://www.vogue.com/article/fashionable-people-on-their-labubu-obsession.
[12] Danielle Chemtob, *Forbes Daily: Labubu Phenomenon Makes A Killing For China Toy Company*, *Forbes* (Jul. 17, 2025), https://www.forbes.com/sites/daniellechemtob/2025/07/17/forbes-daily-labubu-phenomenon-makes-a-killing-for-china-toy-company/.
[13] Alisha Rahaman Sarkar, *Labubu doll maker says profits set to soar 350%,* INDEPENDENT (July 16, 2025),

18.    While Plaintiffs have gained significant common law trademark and other rights in their LABUBU Products through their use, advertising and promotion of the same, POP MART Singapore and POP MART Beijing have also protected their valuable rights by filing for and/or obtaining federal U.S. trademark registrations.

19.    For example, POP MART Singapore and POP MART Beijing are the owners of the LABUBU Registrations (i.e., U.S. Trademark Registration Nos.: 6,592,820 for "**POP MART**" for a variety of goods in Class 28; 7,839,156 for "THE**MONSTERS**" for a variety of goods in Class 28; and 7,839,144 for "LABUBU" for a variety of goods in Class 28). Plaintiff POP MART Singapore is also the owner of the LABUBU Application (i.e., U.S. Trademark Application Serial No. 79/402,363 for "POP MART" for a variety of goods in Classes 14 and 25). True and correct copies of the LABUBU Registrations and LABUBU Application are attached hereto as **Exhibit C** and incorporated herein by reference.

20.    The LABUBU Marks are currently in use in commerce in connection with the LABUBU Products. The LABUBU Marks were first used in commerce on or before the dates of first use as reflected in the LABUBU Registrations included in Exhibit C.

21.    In addition, Plaintiffs are also the owner of a registered copyrights in and related to the LABUBU Products.

22.    For example, POP MART Beijing owns the LABUBU Works, and the U.S. copyright registrations covering the same. True and correct copies of the U.S. copyright

---

https://www.independent.co.uk/asia/china/labubu-pop-mart-profit-demand-b2789814.html.

registrations for the LABUBU Works are included in **Exhibit D** and incorporated herein by reference.

23.     The success of the LABUBU Products is due in part to Plaintiffs' marketing and promotional efforts. These efforts include advertising and promotion through social media, POP MART's website (available at www.popmart.com), print and internet-based advertising and placement of the LABUBU Products at Plaintiffs' numerous retail stores.

24.     Plaintiffs' success is also due to their use of the highest quality materials and processes in making the LABUBU Products.

25.     Additionally, Plaintiffs owe a substantial amount of the success of the LABUBU Products to their consumers and word-of-mouth buzz that their consumers have generated.

26.     Plaintiffs' efforts, the quality of the LABUBU Products and the word-of-mouth buzz generated by their consumers have made the LABUBU Marks, LABUBU Works and LABUBU Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the LABUBU Marks, LABUBU Works and LABUBU Products and have come to associate them exclusively with POP MART. Plaintiffs have acquired a valuable reputation and goodwill among the public as a result of such associations.

27.     Plaintiffs have gone to great lengths to protect their interests in the LABUBU Products, the LABUBU Marks and the LABUBU Works. No one other than Plaintiffs and their authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the LABUBU Marks and/or LABUBU Works or use the LABUBU Marks and/or LABUBU Works in connection with goods or services or otherwise, without the express permission of POP MART.

### Alibaba and AliExpress and Defendants' User Accounts

28.     Alibaba and AliExpress are online marketplaces and e-commerce platforms that

allow manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their wholesale and retail products originating from China directly to consumers worldwide and specifically to consumers residing in the U.S., including New York.

29.     As leaders of China's e-commerce and digital retail market, Alibaba and AliExpress (collectively, the "Alibaba Group"), have generated hundreds of billions in sales worldwide.[14] International markets, including the U.S., make up a significant percentage of sales made on Alibaba and AliExpress. For example, in 2019, revenue from international retail sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[15]

30.     In the fiscal year ending on March 31, 2024, the Alibaba Group's revenue was approximately $130.35 billion.[16]

31.     The press reported that the growth in sales on AliExpress resulted from an increase in the number of buyers, particularly from the U.S., as well as other larges countries like Russia and Brazil.[17]

32.     Additionally, according to Business Insider, excluding China, the U.S. was among the top five countries with packages coming from Alibaba's marketplaces on the company's "Singles' Day" (often compared to the U.S.'s Cyber Monday) in 2015, which resulted in over $14 billion in sales in one day.[18] In 2021, Alibaba set a new Singles Day record with $84.5 billion in

---

[14] *See* Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016), http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commerce-giant-alibaba/#78d364486b52.

[15] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-sales.

[16] Xin Ou, *Annual revenue of Alibaba Group from financial year 2014 to 2024*, STATISTA (June 14, 2022) https://www.statista.com/statistics/225614/net-revenue-of-alibaba/.

[17] *See* Frank Tong, *An Alibaba site sells $4.5 billion in one year to consumers outside of China*, DIGITALCOMMERCE360.COM (Sept. 11, 2014), https://www.internetretailer.com/2014/09/11/alibaba-site-sells-45-billion-one-year-consumers-outs.

[18] *See* Bob Bryan, *Alibaba just proved it's more than just some Chinese company*, BUSINESS INSIDER (Nov. 15, 2015), http://www.businessinsider.com/alibaba-international-expansion-2015-11.

sales across the eleven (11) day event.[19]

33.    Alibaba and AliExpress declined to share their total sales for Singles Day 2023; however, indicated 2023 sales had "a recorded year-on year growth" and 2022 sales were "in line" with the $84.5 billion in sales reported in 2021.[20]

34.    As addressed in the Wall Street Journal, Fortune and the New York Times,[21] and as reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on Alibaba and AliExpress,[22] an astronomical number of counterfeit and infringing products are offered for sale and sold on Alibaba.com and AliExpress.com, as well as other online marketplace platforms, at a rampant rate.

35.    Additionally, the Office of the United States Trade Representative ("USTR") publishes an annual "Notorious Markets List" which highlights specific physical and online markets around the world that are reported to be engaging in and facilitating substantial copyright piracy and trademark counterfeiting, and which is intended to help the U.S. and foreign

---

[19] Dan Berthiaume, *Alibaba sets new Singles Day record with $84.5 billion in sales*, CHAIN STORE AGE (Nov. 11, 2021), https://chainstoreage.com/alibaba-sets-new-singles-day-record-845-billion-sales.

[20] Casey Hall, *China's Singles Day Festival Wraps Up with E-commerce Giants Reporting Sales Growth,* Reuters (Nov. 12, 2023) https://www.reuters.com/world/china/chinas-singles-day-sales-festival-wraps-up-with-e-commerce-giants-reporting-2023-11-12/; Xin Ou, *Alibaba's Gross Merchandise Volume On Singles' Day From 2011 to 2021,* STATISTA (Feb. 27, 2024), https://www.statista.com/statistics/364543/alibaba-singles-day-1111-gmv/; Evelyn Cheng, *Alibaba says 15% of China delivery areas were disrupted during Singles Day shopping festival*, CNBC (Nov. 17, 2022) https://www.cnbc.com/2022/11/18/alibaba-says-15percent-of-china-delivery-areas-disrupted-during-singles-day.html.

[21] *See* Kathy Chu, *Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy*, WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-controversy-1463127605?; Scott Cendrowski, *Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods*, FORTUNE (Aug. 10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; *see also* Kathy Chu, *Alibaba Suspends From Anticounterfeiting Group,* WALL STREET JOURNAL (May 13, 2016), http://www.wsj.com/articles/alibaba-suspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael Schuman, *A Small Table Maker Takes On Alibaba's Flood of Fakes,* N.Y. TIMES (Mar. 18, 2017), https://www.nytimes.com/2017/03/18/business/alibaba-fake-merchandise-e-commerce.html.

[22] *See* Kathy Chu, *Luxury brands get tougher with counterfeiters – and Alibaba,* MARKETWATCH (Aug. 16, 2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611; Gilian Wong, *Alibaba Sued Over Alleged Counterfeits*, WALL STREET JOURNAL (May 17, 2015), http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, *There's no end in sight for Alibaba's counterfeit problem*, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-end-in-sight-for-alibabas-counterfeit-problem/.

governments prioritize intellectual property rights (IPR) enforcement that protects job-supporting innovation and creativity in the U.S. and around the world.[23]

36.    In December 2016, the USTR added Alibaba to its "Notorious Markets" list due to its high levels of "reported counterfeiting and piracy."[24]

37.    In February of 2022, the Office of the United States Trade Representative ("USTR") added AliExpress to its list of 2021 "notorious markets," which are "markets that reportedly facilitate substantial trademark counterfeiting."[25]

38.    On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for Counterfeiting and Piracy, and AliExpress was again designated a "notorious market."[26] The USTR specifically noted that a "key concern of right holders is that penalties for repeat infringers do not stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple accounts.[27]

39.    Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their User Accounts and on their Merchant Storefronts on Alibaba and/or AliExpress.

---

[23] *See* Press Release, Office of the United States Trade Representative, USTR Releases 2020 Review of Notorious Markets for Counterfeiting and Piracy (Jan. 2021), *available at* https://ustr.gov/about-us/policy-offices/press-office/press-releases/2021/january/ustr-releases-2020-review-notorious-markets-counterfeiting-and-piracy; Office of The United States Trade Representative, 2020 Review of Notorious Markets for Counterfeiting and Piracy (2020), *available at* https://ustr.gov/sites/default/files/files/Press/Releases/2020%20Review%20of%20Notorious%20Markets%20for%20Counterfeiting%20and%20Piracy%20(final).pdf.

[24] Laura Stevens, *Alibaba Lands on U.S. Governments' 'Notorious Markets' List for Fakes,* WALL STREET JOURNAL (Dec. 21, 2016), https://www.wsj.com/articles/alibaba-lands-on-u-s-governments-notorious-markets-list-for-fakes-1482356081; *see also Alibaba Lands on U.S. Notorious Markets List for Lax Counterfeit Policies*, CHINATECHNEWS (Dec. 22, 2016), https://www.chinatechnews.com/2016/12/22/24615-alibaba-lands-on-u-s-notorious-markets-list-for-lax-counterfeit-policies.

[25] Michelle Toh, *The US accuses Tencent and Alibaba of letting sellers traffic fake goods*, CNN (Feb. 18, 2022) https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.

[26] USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.

[27] *Id.*

40.    Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and target and ship such products to customers located in the U.S., including New York, and throughout the world.

41.    Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale.

42.    Defendants are in constant communication with each other and regularly participate in online chatroom discussions involving illegal counterfeiting activities, pending litigation and potential new lawsuits.

## Defendants' Wrongful and Infringing Conduct

43.    Particularly in light of Plaintiffs' success with their LABUBU Products, as well as the reputation they have gained, Plaintiffs and their LABUBU Products have become targets for unscrupulous individuals and entities who wish to capitalize on the goodwill, reputation and fame that Plaintiffs has amassed in their LABUBU Products, LABUBU Marks and LABUBU Works and Plaintiffs investigate and enforce against such activities.

44.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiffs learned of Defendants' actions which vary and include, but are not limited to: manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers, including those located in the state of New York, through Defendants' and Merchant Storefronts. Screenshots of Infringing Listings from Defendants' Merchant Storefronts are included in Exhibit A attached hereto and incorporated herein by reference.

45.    Defendants are not, and have never been, authorized by Plaintiffs or any of their

authorized agents, authorized licensees or authorized distributors to copy, manufacture, import, export, advertise, distribute, offer for sale or sell the LABUBU Products or to use the LABUBU Marks, LABUBU Works or any marks and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks and/or LABUBU Works.

46.     Defendants' Counterfeit Products are nearly indistinguishable from Plaintiffs' LABUBU Products, only with minor variations that no ordinary consumer would recognize.

47.     During its investigation, Epstein Drangel identified Defendants as offering for sale and/or selling Counterfeit Products and specified a shipping address located at the New York Address and verified that each Defendant provides shipping to the New York Address. Screenshots of the checkout pages for the Counterfeit Products and pages from Defendants' Merchant Storefronts reflecting that the Defendants ship the Counterfeit Products to the New York Address are included in Exhibit A.

48.     Epstein Drangel confirmed that each Defendant is still currently offering for sale and/or selling Counterfeit Products through their respective Merchant Storefronts, accepting payment for such Counterfeit Products in U.S. Dollars and that each Defendant provides shipping and/or has actually shipped Counterfeit Products to the U.S., including to customers located in New York. Plaintiffs' findings are supported by Defendants' Infringing Listings and/or the checkout pages for Counterfeit Products, which are included in Exhibit A.

49.     For example, below on the left is an image of one of Plaintiffs' LABUBU Products. Depicted further below is a listing for Defendant Guangxi Peirou Technology Information Co., Ltd.'s Counterfeit Product ("Guangxi Peirou Technology Information Co., Ltd. Infringing Listing" and "Guangxi Peirou Technology Information Co., Ltd. Counterfeit Product," respectively). The Guangxi Peirou Technology Information Co., Ltd. Infringing Listing appears

on Defendant Guangxi Peirou Technology Information Co., Ltd.'s Merchant Storefront, https://gxprkj.en.alibaba.com/index.html, and offers the Guangxi Peirou Technology Information Co., Ltd. Counterfeit Product for $2.90-$5.00 per item, using, featuring and/or incorporating the LABUBU Marks, and/or LABUBU Works, and/or confusingly and/or substantially similar marks and/or artwork in the descriptions and/or product images in the body of the listing. Further, the Guangxi Peirou Technology Information Co., Ltd. Counterfeit Product is virtually identical to one of Plaintiffs' LABUBU Products and features and/or incorporates the LABUBU Marks and/or LABUBU Works. There is no question that the Guangxi Peirou Technology Information Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' LABUBU Products or that the Guangxi Peirou Technology Information Co., Ltd. Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the LABUBU Marks and/or LABUBU Works:

| **Plaintiffs' LABUBU Product** | **Defendant's Counterfeit Product** |
|:---:|:---:|
|  |  |

50.    By way of another example, below on the left is an image of one of Plaintiffs' LABUBU Products. Depicted further below is a listing for Defendant Craze Toy Store's Counterfeit Product ("Craze Toy Store Infringing Listing" and "Craze Toy Store Counterfeit Product," respectively). The Craze Toy Store Infringing Listing appears on Defendant Craze Toy Store's Merchant Storefront, https://www.aliexpress.com/store/1104069800, and offers the Craze Toy Store Counterfeit Product for $5.75 per item, using, featuring and/or incorporating the LABUBU Marks, and/or  LABUBU Works and/or confusingly and/or substantially similar marks and/or artwork in the descriptions and/or product images in the body of the listing. Further, the Craze Toy Store Counterfeit Product is virtually identical to one of Plaintiffs' LABUBU Products and features and/or incorporates the LABUBU Marks and/or LABUBU Works. There is no question that Craze Toy Store Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' LABUBU Products or that the Craze Toy Store Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the LABUBU Marks and/or LABUBU Works:

**Plaintiffs' LABUBU Product**          **Defendant's Counterfeit Product**

          

14

51.     As another example, below on the left is an image of one of Plaintiffs' LABUBU Products. Depicted further below is a listing for Defendant Easylive Commerce (Guangzhou) Co., Ltd.'s Counterfeit Product ("Easylive Commerce (Guangzhou) Co., Ltd. Infringing Listing" and "Easylive Commerce (Guangzhou) Co., Ltd. Counterfeit Product," respectively). The Easylive Commerce (Guangzhou) Co., Ltd. Infringing Listing appears on Defendant Easylive Commerce (Guangzhou) Co., Ltd.'s Merchant Storefront, https://gzeasylive.en.alibaba.com/index.html, and offers the Easylive Commerce (Guangzhou) Co., Ltd. Counterfeit Product for $2.67-$3.11 per item, using, featuring and/or incorporating the LABUBU Marks, and/or LABUBU Works and/or confusingly and/or substantially similar marks and/or artwork in the descriptions and/or product images in the body of the listing. Further, the Easylive Commerce (Guangzhou) Co., Ltd. Counterfeit Product is virtually identical to one of Plaintiffs' LABUBU Products and features and/or incorporates the LABUBU Marks and/or LABUBBU Works. There is no question that Easylive Commerce (Guangzhou) Co., Ltd. Counterfeit Product is designed to confuse and mislead consumers into believing that they are purchasing one of Plaintiffs' LABUBU Products or that the Easylive Commerce (Guangzhou) Co., Ltd. Counterfeit Product is otherwise approved by or sourced from Plaintiffs, thereby trading off of the goodwill and reputation of Plaintiffs by engaging in the unauthorized use of the LABUBU Marks and/or LABUBU Works:

**Plaintiffs' LABUBU Product**

**Defendant's Counterfeit Product**





52.     By these dealings in Counterfeit Products (including, without limitation, copying, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products), Defendants violated Plaintiffs' exclusive rights in the LABUBU Marks and LABUBU Works, and have used marks and/or artwork that are confusingly and/or substantially similar to, identical to and/or constitute counterfeiting and/or infringement of the LABUBU Marks and/or LABUBU Works, in order to confuse consumers into believing that such Counterfeit Products are the LABUBU Products and aid in the promotion and sales of their Counterfeit Products. Defendants' conduct began long after Plaintiffs' adoption and use of the LABUBU Marks and LABUBU Works, after Plaintiffs obtained federal registrations in the LABUBU Marks and LABUBU Works, as alleged above, and after Plaintiffs' LABUBU Products and LABUBU Marks and LABUBU Works became well-known to the purchasing public.

53.     Prior to and contemporaneous with their counterfeiting and infringing actions alleged herein, Defendants had knowledge of Plaintiffs' ownership of the LABUBU Marks and LABUBU Works, of the fame and incalculable goodwill associated therewith and of the popularity

16

and success of the LABUBU Products, and in bad faith adopted the LABUBU Marks and LABUBU Works.

54.    Defendants have been engaging in the illegal counterfeiting and infringing actions, as alleged herein, knowingly and intentionally, or with reckless disregard or willful blindness to Plaintiffs' rights, or in bad faith, for the purpose of trading on the goodwill and reputation of Plaintiffs, their LABUBU Marks, LABUBU Works and LABUBU Products.

55.    Defendants' dealings in Counterfeit Products, as alleged herein, has caused, and will continue to cause confusion, mistake, economic loss, and has, and will continue to deceive consumers, the public and the trade with respect to the source or origin of Defendants' Counterfeit Products, thereby causing consumers to erroneously believe that such Counterfeit Products are licensed by or otherwise associated with Plaintiffs, thereby damaging Plaintiffs.

56.    By engaging in these actions, Defendants have, jointly and severally, among other things, willfully and in bad faith committed the following, all of which have and will continue to cause irreparable harm to Plaintiffs: infringed and/or counterfeited the LABUBU Marks and/or LABUBU Works, committed unfair competition and unfairly and unjustly profited from such activities at Plaintiffs' expense.

57.    Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

### CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**(Trademark Counterfeiting)**
**[15 U.S.C. § 1114(1)(b)/Lanham Act § 32; 15 U.S.C. § 1116(d)/Lanham Act § 34; 15 U.S.C. § 1117(b)-(c)/Lanham Act § 35]**
**(By POP MART Singapore POP MART Beijing Against All Defendants)**

58.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

59.    POP MART Singapore and POP MART Beijing are the exclusive owners of all

right and title to their respective registered LABUBU Marks.

60.    POP MART has continuously used the LABUBU Marks in interstate commerce since on or before the dates of first use as reflected in the LABUBU Registrations attached hereto as Exhibit C.

61.    Without POP MART Singapore's and POP MART Beijing's authorization or consent, with knowledge of POP MART Singapore's and POP MART Beijing's well-known and prior rights in their LABUBU Marks and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied and/or colorably imitated the LABUBU Marks and/or used spurious designations that are identical with, or indistinguishable from, the LABUBU Marks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products.

62.    Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold their Counterfeit Products to the purchasing public in direct competition with POP MART, in or affecting interstate commerce, and/or have acted with reckless disregard of POP MART Singapore's and/or POP MART Beijing's rights in and to the LABUBU Marks through their participation in such activities.

63.    Defendants have applied their reproductions, counterfeits, copies and colorable imitations of the LABUBU Marks to packaging, point-of-purchase materials, promotions and/or advertisements intended to be used in commerce upon, or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling of Defendants' Counterfeit Products, which is likely to cause confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products,

and is likely to deceive consumers, the public and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with or are otherwise authorized by POP MART Singapore and/or POP MART Beijing, thereby making substantial profits and gains to which they are not entitled in law or equity.

64.     Defendants' unauthorized use of the LABUBU Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by POP MART Singapore or POP MART Beijing or their authorized agents and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the LABUBU Marks.

65.     Defendants' actions constitute willful counterfeiting of the LABUBU Marks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d) and 1117(b)-(c).

66.     As a direct and proximate result of Defendants' illegal actions alleged herein, Defendants have caused substantial monetary loss and irreparable injury and damage to POP MART Singapore and POP MART Beijing, their businesses, their reputation and their valuable rights in and to their respective LABUBU Marks and the goodwill associated therewith, in an amount as yet unknown, but to be determined at trial, for which POP MART Singapore and POP MART Beijing have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to POP MART Singapore and POP MART Beijing and their valuable LABUBU Marks.

67.     Based on Defendants' actions as alleged herein, POP MART Singapore and POP MART Beijing are entitled to injunctive relief, damages for the irreparable harm that POP MART Singapore and POP MART Beijing have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions, as alleged herein, and all gains, profits and advantages obtained

19

by Defendants as a result thereof, enhanced discretionary damages, treble damages and/or statutory damages of up to $2,000,000 per counterfeit mark per type of goods sold, offered for sale or distributed and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**(Infringement of Registered Trademarks)**
**[15 U.S.C. § 1114/Lanham Act § 32(a)]**
**(By POP MART Singapore and POP MART Beijing Against All Defendants)**

68.     Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

69.     POP MART Singapore and POP MART Beijing are the exclusive owners of all right and title to their respective LABUBU Registrations.

70.     POP MART has continuously used the LABUBU Marks in interstate commerce since on or before the dates of first use as reflected in the LABUBU Registrations attached hereto as Exhibit C.

71.     POP MART Singapore and POP MART Beijing, as owners of all right, title and interest in and to their respective registered LABUBU Marks, have standing to maintain an action for trademark infringement under 15 U.S.C. § 1114.

72.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that POP MART Singapore and POP MART Beijing are the owners of the LABUBU Registrations for the LABUBU Marks.

73.     Defendants did not seek and thus inherently failed to obtain consent or authorization from POP MART Singapore and POP MART Beijing , as the registered trademark owners of the LABUBU Registrations for the LABUBU Marks, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell the LABUBU Products and/or related products bearing the LABUBU Marks into the

stream of commerce.

74.    Defendants knowingly and intentionally used the LABUBU Marks, or marks that are identical or confusingly similar thereto, on or in connection with the manufacture, importation, exportation, advertisement, marketing, promotion, distribution, offering for sale and/or sale of Counterfeit Products.

75.    Defendants' egregious and intentional use of the LABUBU Marks or marks that are identical or confusingly similar thereto, in commerce on or in connection with Defendants' Counterfeit Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Counterfeit Products, and is likely to deceive the public into believing that Defendants' Counterfeit Products are POP MART Singapore and POP MART Beijing's LABUBU Products or are otherwise associated with, or authorized by, POP MART Singapore and POP MART Beijing .

76.    Defendants' actions have been deliberate and committed with knowledge of POP MART Singapore's and POP MART Beijing's rights and goodwill in the LABUBU Marks, as well as with bad faith and the intent to cause confusion, mistake and deception.

77.    Defendants' continued, knowing, and intentional use of the LABUBU Marks without POP MART Singapore's and POP MART Beijing's consent or authorization constitutes intentional infringement of POP MART Singapore's and POP MART Beijing's  federally registered LABUBU Marks in violation of §32 of the Lanham Act, 15 U.S.C. § 1114.

78.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, POP MART Singapore and POP MART Beijing have suffered substantial monetary loss and irreparable injury, loss and damage to their business and their valuable rights

in and to the LABUBU Marks and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which POP MART Singapore and POP MART Beijing have no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to POP MART Singapore and POP MART Beijing  and the valuable LABUBU Marks.

79.    Based on Defendants' actions as alleged herein, POP MART Singapore and POP MART Beijing are entitled to injunctive relief, damages for the irreparable harm that POP MART Singapore and POP MART Beijing have sustained, and will sustain, as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117, and 1118, and reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**(Infringement of Unregistered Trademark)**
**[15 U.S.C. § 1125/Lanham Act § 43(a)]**
**(By POP MART Singapore Against All Defendants)**

80.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

81.    POP MART Singapore is the exclusive owner of all right and title to the LABUBU Application.

82.    POP MART has continuously used the LABUBU Mark covered by the LABUBU Application ("Unregistered LABUBU Mark") in interstate commerce since on or before the dates of first use as reflected in the LABUBU Application attached hereto as Exhibit C.

83.    POP MART Singapore, as the owner of all right, title and interest in and to the LABUBU Application, has standing to maintain an action for trademark infringement under 15 U.S.C. § 1125.

84.     Defendants were, at the time they engaged in their actions as alleged herein, actually aware that POP MART Singapore is the owner of the Unregistered LABUBU Mark.

85.     Defendants did not seek, and therefore necessarily failed, to obtain consent or authorization from POP MART Singapore, as the trademark owner of the Unregistered LABUBU Mark, to deal in and commercially manufacture, import, export, advertise, market, promote, distribute, display, retail, offer for sale and/or sell LABUBU Products and/or related products bearing the Unregistered LABUBU Mark into the stream of commerce.

86.     Defendants knowingly and intentionally manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Infringing Products bearing and/or utilizing marks that are reproductions, copies and/or colorable imitations of the Unregistered LABUBU Mark and/or which are identical or confusingly similar thereto.

87.     Defendants were, at the time they engaged in their illegal and infringing actions as alleged herein, actually aware that POP MART Singapore is the owner of all rights in and to the Unregistered LABUBU Mark.

88.     Defendants' egregious and intentional use of the Unregistered LABUBU Mark in commerce on or in connection with Defendants' Infringing Products has caused, and is likely to continue to cause, actual confusion and mistake, and has deceived, and is likely to continue to deceive, the general purchasing public as to the source or origin of the Infringing Products, and is likely to deceive the public into believing that Defendants' Infringing Products are LABUBU Products or are otherwise associated with or authorized by POP MART Singapore.

89.     Defendants' actions have been deliberate and committed with knowledge of POP MART Singapore's rights and goodwill in the Unregistered LABUBU Mark, as well as with bad faith and the intent to cause confusion, mistake and deception.

90.    Defendants' continued, knowing and intentional use of the Unregistered LABUBU Mark without POP MART Singapore's consent or authorization constitutes intentional infringement of the Unregistered LABUBU Mark in violation of §43 of the Lanham Act, 15 U.S.C. § 1125.

91.    As a direct and proximate result of Defendants' illegal and infringing actions as alleged herein, POP MART Singapore has suffered substantial monetary loss and irreparable injury, loss and damage to its business and its valuable rights in and to the Unregistered LABUBU Mark and the goodwill associated therewith in an amount as yet unknown, but to be determined at trial, for which it has no adequate remedy at law, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss and damage to \POP MART Singapore and its valuable Unregistered LABUBU Mark.

92.    Based on Defendants' actions as alleged herein, POP MART Singapore is entitled to injunctive relief, damages for the irreparable harm that it has sustained and will sustain as a result of Defendants' unlawful and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, as well as other remedies provided by 15 U.S.C. §§ 1116, 1117 and 1118, and reasonable attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**(False Designation of Origin, Passing Off & Unfair Competition)**
**[15 U.S.C. § 1125(a)/Lanham Act § 43(a)]**
**(By All Plaintiffs Against All Defendants)**

93.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.    POP MART, as the owners of all right, title and interest in and to the LABUBU Marks, including any and all common law rights therein, have standing to maintain an action for

false designation of origin and unfair competition under the Federal Trademark Statute, Lanham Act § 43(a) (15 U.S.C. § 1125).

95.     The LABUBU Marks are inherently distinctive and/or have acquired distinctiveness.

96.     Defendants knowingly and willfully used in commerce marks that are identical or confusingly similar to the LABUBU Marks and/or affixed, applied and/or used other words, names, symbols or designs in connection with the promotion of Defendants' Infringing Products product and/or labeling designs that are identical or confusingly similar to, and constitute reproductions of the LABUBU Marks and affixed, applied and used false designations of origin and false and misleading descriptions and representations on or in connection with the manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or sale of Infringing Products with the intent to cause confusion, to cause mistake and to deceive the purchasing public into believing, in error, that Defendants' substandard Infringing Products are LABUBU Products or related products, and/or that Defendants' Infringing Products are authorized, sponsored, approved, endorsed or licensed by Plaintiffs and/or that Defendants are affiliated, connected or associated with Plaintiffs, thereby creating a likelihood of confusion by consumers as to the source of such Infringing Products, and allowing Defendants to capitalize on the goodwill associated with, and the consumer recognition of, the LABUBU Marks, to Defendants' substantial profit in blatant disregard of Plaintiffs' rights.

97.     By using marks that are identical or confusingly similar to the LABUBU Marks, Defendants have traded off the extensive goodwill of Plaintiffs and their LABUBU Marks to induce customers to purchase Defendants' Infringing Products, and will continue to induce such customers to do the same. Such conduct has permitted, and will continue to permit, Defendants to

make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which they have amassed through their nationwide marketing, advertising, sales and consumer recognition.

98.     Defendants knew, or by the exercise of reasonable care should have known, that their adoption and commencement of and continuing use in commerce of marks that are identical or confusingly similar to and constitute reproductions of the LABUBU Marks would cause confusion, mistake or deception among purchasers, users and the public.

99.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive the purchasing public and with the intent to trade on the goodwill and reputation of Plaintiffs, their LABUBU Products and LABUBU Marks.

100.    As a direct and proximate result of Defendants' aforementioned actions, Defendants have caused irreparable injury to Plaintiffs by depriving them of sales of their LABUBU Products and by depriving Plaintiffs of the value of their LABUBU Marks as commercial assets in an amount as yet unknown, but to be determined at trial, for which they have no adequate remedy at law, and unless immediately restrained, Defendants will continue to cause substantial and irreparable injury to Plaintiffs and the goodwill and reputation associated with the value of the LABUBU Marks.

101.    Based on Defendants' wrongful conduct, Plaintiffs are entitled to injunctive relief as well as monetary damages and other remedies as provided by the Lanham Act, including damages that Plaintiffs have sustained and will sustain as a result of Defendants' illegal and infringing actions as alleged herein, and all gains, profits and advantages obtained by Defendants as a result thereof, enhanced discretionary damages and reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**(Federal Copyright Infringement)**
**[17 U.S.C. § 501(a)]**
**(By POP MART Beijing Against All Defendants)**

102.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

103.    POP MART Beijing is the exclusive owner of the LABUBU Works.

104.    Defendants had actual notice of POP MART Beijing's exclusive rights in and to the LABUBU Works.

105.    Defendants did not attempt and therefore inherently failed to obtain POP MART Beijing's consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market the LABUBU Products and/or LABUBU Works.

106.    Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the LABUBU Works by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling infringing products, which bear such LABUBU Works, or artwork that is, at a minimum, substantially similar to the LABUBU Works.

107.    Defendants' unlawful and willful actions as alleged herein constitute infringement of the LABUBU Works, including POP MART Beijing's exclusive rights to reproduce, display, distribute, sell and/or create derivations of such LABUBU Works in violation of 17 U.S.C. § 501(a).

108.    Defendants' knowing and intentional copyright infringement, as alleged herein, has caused substantial and irreparable harm to POP MART Beijing in an amount as yet unknown but to be proven at trial, for which POP MART Beijing has no adequate remedy at law, and unless

enjoined, Defendants will continue to cause, substantial and irreparable harm to POP MART Beijing.

109.    Based on Defendants' wrongful conduct, POP MART Beijing is entitled to injunctive relief, its actual damages and Defendants' profits in an amount to be proven at trial and enhanced discretionary damages for willful copyright infringement, and reasonable attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### (Unfair Competition)
### [New York Common Law]
### (By All Plaintiffs Against All Defendants)

110.    Plaintiffs replead and incorporate by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

111.    By using marks that are identical or confusingly similar to the LABUBU Marks on or in connection with Defendants' Infringing Products and/or the advertisement, marketing, promotion, and/or offering for sale of Defendants' Infringing Products, Defendants have traded off the extensive goodwill of Plaintiffs and the LABUBU Marks and LABUBU Products to induce, and did induce and intends and will continue to induce, customers to purchase Defendants' Infringing Products, thereby directly competing with Plaintiffs. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiffs, which Plaintiffs have amassed through their nationwide marketing, advertising, sales and consumer recognition.

112.    Defendants' use of the marks that are identical or confusingly similar to Plaintiffs' LABUBU Marks was and is in violation and derogation of Plaintiffs' rights and is likely to cause confusion and mistake, and to deceive consumers and the public as to the source, origin, sponsorship or quality of Defendants' infringing products.

113.    Defendants knew, or by the exercise of reasonable care should have known, that their use of marks that are identical or confusingly similar to Plaintiffs' LABUBU Marks on or in connection with Defendants' infringing products would cause confusion and mistake, or deceive purchasers, users and the public.

114.    Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion and mistake, and to deceive, in blatant disregard of Plaintiffs' rights, and for the wrongful purpose of injuring Plaintiffs, and their competitive position while benefiting Defendants.

115.    As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiffs have been and will continue to be deprived of substantial sales of their LABUBU Products in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law, and Plaintiffs have been and will continue to be deprived of the value of their LABUBU Marks and LABUBU Works as commercial assets in an amount as yet unknown but to be determined at trial, for which Plaintiffs have no adequate remedy at law.

116.    As a result of Defendants' actions alleged herein, Plaintiffs are entitled to injunctive relief, an order granting Plaintiffs' damages and Defendants' profits stemming from their infringing activities, and exemplary or punitive damages for Defendants' intentional misconduct.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendants, inclusive, and each of them, as follows:

A.    For an award of Defendants' profits and POP MART Singapore's and POP MART Beijing's damages pursuant to 15 U.S.C. § 1117(a), enhanced discretionary damages under 15 U.S.C. § 1117(a) and treble damages in the amount of a sum equal to three (3)

times such profits or damages, whichever is greater, pursuant to 15 U.S.C. § 1117(b) for willfully and intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark in violation of 15 U.S.C. § 1114(1)(a);

B.    In the alternative to Defendants' profits and POP MART Singapore's and POP MART Beijing's actual damages, enhanced discretionary damages and treble damages for willful use of a counterfeit mark in connection with the sale, offering for sale or distribution of goods or services, for statutory damages pursuant to 15 U.S.C. § 1117(c) in the amount of not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the Court considers just, which POP MART Singapore and POP MART Beijing may elect prior to the rendering of final judgment;

C.    For an award of Defendants' profits and POP MART Singapore's and POP MART Beijing's  damages in an amount to be proven at trial for willful trademark infringement of POP MART Singapore's and POP MART Beijing's federally registered LABUBU Marks, and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a);

D.    For an award of Defendants' profits and Plaintiffs' damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial and such other compensatory damages as the Court determines to be fair and appropriate pursuant to 15 U.S.C. § 1117(a) for false designation of origin and unfair competition under 15 U.S.C. §1125(a);

E.    For an award of POP MART Beijing's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the LABUBU Works under 17 U.S.C. § 501(a);

F.    In the alternative to POP MART Beijing's  actual damages and Defendants' profits for copyright infringement of the LABUBU Works pursuant to 17 U.S.C. § 504(b), for statutory damages of up to $150,000 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which POP MART Beijing's may elect prior to the rendering of final judgment;

G.    For an award of damages to be proven at trial for common law unfair competition;

H.    For a preliminary and permanent injunction by this Court enjoining and prohibiting Defendants, or their agents, and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns and entities owned or controlled by Defendants, and all those in active concert or participation with Defendants, and each of them who receives notice directly or otherwise of such injunction from:

     i.    manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

    ii.    directly or indirectly infringing in any manner any of Plaintiffs' LABUBU Marks and/or LABUBU Works;

   iii.    using any reproduction, counterfeit, copy or colorable imitation of Plaintiffs' LABUBU Marks and/or LABUBU Works to identify any goods or services not authorized by Plaintiffs;

   iv.    using any of Plaintiffs' LABUBU Marks and/or LABUBU Works and/or any other marks and/or artwork that are confusingly and/or substantially similar to the LABUBU Marks and/or LABUBU Works, on or in

connection with Defendants' manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling and/or otherwise dealing in the Counterfeit Products;

v.   using any false designation of origin or false description, or engaging in any action which is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants with Plaintiffs, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities by Plaintiffs;

vi.   engaging in the unlawful, unfair or fraudulent business acts or practices, including, without limitation, the actions described herein, including the of advertising and/or dealing in any Counterfeit Products;

vii.   engaging in any other actions that constitute unfair competition with Plaintiffs;

viii.   engaging in any other act in derogation of Plaintiffs' rights;

ix.   from secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products; (ii) any computer files, data, business records, documents or any other records or evidence relating to Defendants' User Accounts or Merchant

Storefronts, Defendants' Assets from or to Defendants' Financial Accounts and the manufacture, importation, exportation, advertising, marketing, promotion, distribution, display, offering for sale and/or sale of Counterfeit Products;

x.   from secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying any of Defendants' Assets from or Defendants' Financial Accounts until further ordered by this Court;

xi.   effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in any final judgment or order in this action;

xii.   providing services to Defendants, Defendants' User Accounts and Defendants' Merchant Storefronts, including, without limitation, continued operation of Defendants' User Accounts and Merchant Storefronts; and

xiii.   instructing any other person or entity to engage or perform any of the activities referred to in subparagraphs (i) through (xii) above; and

I.    For an order of the Court requiring that Defendants recall from any distributors and retailers and deliver up to Plaintiffs for destruction any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of such distributors and retailers that infringe any of Plaintiffs' LABUBU Marks and/or LABUBU Works, and/or bear any marks and/or artwork that are confusingly and/or substantially similar to the LABUBU

Marks and/or LABUBU Works;

J.    For an order of the Court requiring that Defendants deliver up for destruction to Plaintiffs any and all Counterfeit Products and any and all packaging, labels, tags, advertising and promotional materials and any other materials in the possession, custody or control of Defendants that infringe any of Plaintiffs' LABUBU Marks, or bear any marks that are confusingly similar to the LABUBU Marks pursuant to 15 U.S.C. § 1118;

K.    For an order from the Court requiring that Defendants provide complete accountings for any and all monies, profits, gains and advantages derived by Defendants from their manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, sale and/or otherwise dealing in the Counterfeit Products as described herein, including prejudgment interest;

L.    For an order from the Court that an asset freeze or constructive trust be imposed over any and all monies, profits, gains and advantages in Defendants' possession which rightfully belong to Plaintiffs;

M.    For an award of exemplary or punitive damages in an amount to be determined by the Court;

N.    For Plaintiffs' reasonable attorneys' fees;

O.    For all costs of suit; and

P.    For such other and further relief as the Court may deem just and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs respectfully demand a trial by jury on all claims.

Dated: August \_\_\_, 2025

Respectfully submitted,

EPSTEIN DRANGEL LLP

BY: _____

Melissa J. Levine
mlevine@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiffs*
*POP MART Americas Inc.,*
*POP MART (Singapore) Holding*
*Pte. Ltd. and*
*Beijing POP MART*
*Cultural & Creative Co. Ltd.*